IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) No. 20 CR 298 |
| | ) |
| Khiry Jackson, | ) |
| | ) |
| Defendant. | ) |

<u>Memorandum Opinion and Order</u>

Defendant Khiry Jackson is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was arrested after an approximately minute-long foot chase through the courtyard and parking lot of a Chicago Housing Authority ("CHA") complex, then across the street and down a gangway between private residences before finding himself cornered and surrendering to Officer Nicholas Estrada. He moves to quash his arrest and suppress evidence of a weapon that was recovered from the back yard of a neighboring property moments after Mr. Jackson's arrest. For the reasons explained below, I deny the motion.

I.

On the evening of October 14, 2019, Officer Estrada and his partner, Officer Raymond Arce, were patrolling an area designated a "high gang/narcotic area hot-spot." Incident Arrest, Gov. Exh. 1, at

1

2. From their squad car, they observed several individuals who appeared to be loitering outside of a CHA complex and decided to investigate. As they approached, they saw Mr. Jackson jump over the wrought-iron fence that enclosed the property and take off running through the courtyard.

The sequence of events that follows is captured by the body-worn cameras ("BWCs") of Officers Arce, Estrada, and an unidentified responding officer. Officer Estrada, dressed in plain clothes and a police vest, walks across the sidewalk and into the courtyard, which he enters through an open gate near where Mr. Jackson jumped the fence. Once inside the courtyard, Estrada begins running after Jackson. Seconds later, Arce turns and heads back to the squad car. The audio portion Arce's camera footage cuts in at this point, and Arce can be heard to shout into his radio, "he's holding his side, squad, he might have a gun!" Arce BWC, Gov. Exh. 3, at 1:52-2:02. Arce then returns to his vehicle and drives off.

Meanwhile, Officer Estrada's BWC comes online as his pursuit of Jackson is underway. Estrada can be heard to shout, "let me see your hands!" multiple times, and his weapon is drawn as he chases Mr. Jackson around the housing complex and back across the street. Estrada BWC, Gov. Exh. 2, at 0:00-0:30. As Estrada closes in, Jackson pushes open a gate at the entrance of a three-flat apartment building across the street from the CHA complex and runs down the gangway of this building toward the alley. *Id.* at 0:30. At this point, Estrada

2

is hot on Jackson's heels and enters the gate just steps behind him, then yells into his radio, "he's got a gun! He's got a gun!" *Id*. at 0:33.

Although not visible on Estrada's BWC footage, Estrada testified that as Jackson ran down the gangway, he "launched" the weapon "into the next yard over." Tr. of 03/03/23 Hr'g., at 32:20. Jackson is then observed rounding the back of the apartment building, where he finds himself cornered. As Estrada approaches, Jackson raises his hands in surrender, then lies on the ground and allows Estrada to handcuff him.

After Mr. Jackson is taken into custody and handed off to other officers, Estrada and Arce—who by then had arrived on the arrest scene—searched the back yard of the property two doors down from where Estrada had seen Jackson throw a gun. In the meantime, the owner of that property had reported to police that someone threw a gun into his backyard. *See* Incident Report, Gov. Exh. 1, at 2; BWC footage, Gov. Exh. 4, at 3:30-3:33. The officers' BWC footage later shows Estrada recovering a gun from a vegetable patch in the yard then clearing it of multiple rounds of ammunition into the grass.

Officer Estrada was the sole witness at Mr. Jackson's evidentiary hearing. Estrada testified that as he and Officer Arce approached in their squad car, he saw Jackson jump the fence into the housing complex courtyard and begin to run. Estrada exited the car, walked up to the entrance gate, and "saw it was open, so [he]

3

entered the gate and started to approach the subject asking him to stop."[1] Hr'g. Tr. at 20:4-5. Jackson ignored this command and continued running. Estrada testified that as he ran, Jackson was holding his side, clutching his waistband in a manner that led Estrada to believe, based on his experience, that Jackson was concealing a weapon. *Id*. at 22:25-21:8.

In his motion, Jackson argues that his seizure was unlawful because the officers lacked a reasonable basis for suspecting him of involvement in criminal activity as required to conduct an investigative stop pursuant to *Terry v. Ohio,* 392 U.S. 1, 27, (1968). He accompanies his motion with an affidavit in which he states that he was an invited guest at the CHA complex and was not loitering or trespassing, nor was he "holding [his] side" as he traveled away from the officers.

## II.

Mr. Jackson's Fourth Amendment theory is at odds with both the law and the facts. As Jackson correctly acknowledges, to conduct a lawful *Terry* stop, the patrolling officers needed only a reasonable suspicion, based on the totality of the circumstances known to them, that "criminal activity was afoot," and that Jackson may have been involved. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). While

---

[1] The footage from Officer Arce's BWC shows Estrada pushing the gate open and walking through it, so I interpret this testimony to mean not that the gate was wide open, but that it was sufficiently ajar for Estrada to see that he could push it open. *See* Arce BWC at 1:50-53.

4

Jackson's "mere presence in an area of expected criminal activity does not in and of itself justify an investigatory stop," his "location remains relevant" to the analysis, as does his "evasive behavior." *United States v. Baskin*, 401 F.3d 788, 791 (7th Cir. 2005). Here, the parties agree that Jackson jumped over a six-foot fence, even though there was an open gate just steps away, and that he began running through the courtyard, away from the officers. These circumstances are sufficient to warrant the officers' reasonable suspicion, *see States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003) ("a person's flight upon seeing the police approach in a high crime area establishes reasonable suspicion to justify a *Terry* stop"), which was enhanced by their observation that Jackson was holding his side in a manner consistent with concealing a weapon.

With respect to the facts, although Mr. Jackson disputes that he was holding his side, I find based on both the BWC footage and Officer Estrada's credible live testimony that both officers perceived him to be doing so. Officer Estrada acknowledged, in response to questioning by Mr. Jackson's counsel, that at the time of the arrest, he observed Jackson's pants "hanging down off his back side," and that Jackson's posture as he ran "could be" consistent with holding his pants up. Hr'g. Tr. at 80:4-6, 12. But even probable cause—a higher standard than reasonable suspicion— "deals not with hard certainties but with probabilities" and "allows room for reasonable mistakes." *Abbott v. Sangamon Cnty., Ill.*, 705

5

F.3d 706, 714 (7th Cir. 2013). Even if Jackson was holding up his pants rather than concealing the weapon that Estrada later saw him throw over a fence, the inference the officers drew from his posture was reasonable based on their experience.

Then there is the matter of when Jackson was actually seized. In Mr. Jackson's view, his seizure occurred at the moment Officer Estrada made a "show of authority" by "kicking in a gate" (though that is not what the video shows), then chasing him while issuing verbal commands and drawing his weapon. But that's not right. "While an officer's application of physical force always constitutes a seizure, a 'show of authority' alone is insufficient; an officer's show of authority becomes a seizure only if the person at whom it is directed actually submits to that authority.... In other words, there are two kinds of seizures: those effected through physical force and those effected through a show of authority *and* 'submission to the assertion of authority.'" *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)) (emphasis in *Griffin*).

Because Mr. Jackson submitted to Officer Estrada's authority only after finding himself cornered behind an apartment building, that is when his seizure occurred. *See id*. at 800. ("If a suspect is not seized during the entire time he is being pursued by police, then the seizure does not occur until he submits to the show of authority or the pursuing officer resorts to force to stop the

6

suspect's flight."). By that time, not only had Officers Estrada and Arce observed him jumping a fence in apparent flight and holding his side in a manner that suggested he was concealing a weapon, but Officer Estrada had actually seen the weapon and seen Mr. Jackson "launch" it into a neighboring yard. I have no trouble concluding that at that point, Mr. Jackson's arrest was supported by probable cause. Accordingly, there is no basis for quashing his arrest or excluding evidence obtained as a result.

III.

For the foregoing reasons, the motion to quash arrest and exclude evidence is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 20, 2023